SCHOTT, Chief Judge,
dissenting:
The trial judge stated:
“If Ochsner had given proper notice to the Defendant, he could have chosen to discontinue treatments. Without the knowledge, however, the Defendant continued to seek medical attention under the assumption that he was responsible only for his 20% insurance co-payment.”
I respectfully submit that this reasoning is flawed. The notice referred to by the trial judge was the notice that Ochsner would no longer file claims with the insurance company and therefore the defendant would have to do it. No matter who filed the claim defendant would pay only his 20%. The only additional burden on defendant was to file his own claim. Nowhere in his testimony or his wife’s is there the suggestion that he would have discontinued *501 his treatments had he known about this additional inconvenience of filing his own claims.
The real problem arose out of the failure to file the final insurance claim. The last charges were incurred in September, 1986. Both sides seem to agree that the claim had to be filed within a year thereafter. The question is whose fault was it that the claim wasn’t filed on time. Mrs. Prima testified that in June, 1987 the Ochsner collection department prepared the insurance claim and sent it to the defendants with an explanation that they should forward it to the insurance company. Mrs. Prima was very freely cross-examined by Mr. and Mrs. Skipper who were representing themselves. The following excerpts from this testimony are most significant:
EXAMINATION BY MR. SKIPPER:
Q What did you say you sent us out?
A I sent out a claim for the dates of service that were not ever filed with Aetna in June of ’87.
Q What we received was just an invoice. A bill is what we received, a bill that I remember getting anything other than a bill.
MRS. SKIPPER:
There was never a claim sent.
Next, there was a colloquy concerning the change of policy by Ochsner’s psychiatry department whereby it would no longer file insurance claims for the patients, and the testimony continued:
MR. SKIPPER:
Which they didn’t mail us anything.
THE WITNESS:
We mailed it directly from the collection department.
MR. SKIPPER:
All we received was a bill.
THE WITNESS:
Well, we have contacted you a few times before this.
MR. SKIPPER:
And we asked you—
THE WITNESS:
We did mail out a claim to you with an explanation to please forward it to your insurance company. This was in June of ’87.
MRS. SKIPPER:
A claim was never mailed to us by Ochsner Clinic. You never mailed us a claim. A bill was mailed, but not a claim.
THE WITNESS:
A claim, an A.M.A. claim, with a diagnosis on it was mailed out in June.
MRS. SKIPPER:
Okay. We received a claim. We received a form with a diagnosis.
THE WITNESS:
And you were to forward that to your insurance company.
Once Mrs. Skipper admitted she received the claim form with the diagnosis I fail to see how she and her husband could avoid their responsibility to file it. At this point they had three months to file their claim and they did nothing. They owed the bill and they had a valid claim against their insurance company for the funds with which to pay their bill. By their own inaction they released the insurance company of liability. I fail to see how or why this excused them from paying Ochsner.
Finally, it seems to me that if defendants had some reason to believe that Ochsner could not transfer to them the responsibility for filing the claim they had a duty to notify Ochsner of this, to make some sort of demand on Ochsner. After all, Ochsner had a valid claim against defendants, it prepared a claim for defendants to sign and file with their insurance company, it sent the claim form to them and they received it. At that point Ochsner had every right to assume that the defendants would file it. By doing nothing defendants are equitably estopped from claiming that Ochsner breached some duty to them.
I would reverse the judgment of the trial court.